**GKG CARIBE, INC. d/b/a Microage and d/b/a Cellular One, Plaintiff,**

v.

**NOKIA–MOBIRA, INC., Cellular World, Inc., Defendants.**

**Civ. No. 88–1774 GG.**

United States District Court, D. Puerto Rico.

Nov. 15, 1989.

Ernesto González Piñero, San Juan, P.R., for plaintiff.

O'Neill & Borges, Pedro J. Santa–Sánchez, Hato Rey, P.R., for defendant Nokia–Mobira, Inc.

Carlos E. Jiménez, San Juan, P.R., for defendant Cellular World, Inc.

## OPINION AND ORDER

GIERBOLINI, District Judge.

Plaintiff has filed the present action seeking damages as a result of an alleged breach of an exclusive distributor agreement. Jurisdiction invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1337 is not in controversy.

Now pending is a motion filed by co-defendant Nokia–Mobira, Inc. (Nokia–Mobira) requesting that the complaint be dismissed or the proceedings stayed pending arbitration. It appears from the exhibits attached to co-defendant's motion that Nokia–Mobira has given notice of the exercise of its contractual option under the arbitration provision of Clause XVI of the distributor agreement executed by Nokia–Mobira and plaintiff GKG Caribe, Inc. d/b/a Microage and d/b/a Cellular One (Cellular One). The appearing co-defendant has also informed plaintiff that all claims asserted against it must be submitted to arbitration in accordance with the terms of the distributor agreement. Plaintiff Cellular One has filed an opposition.

Plaintiff Cellular One, a Puerto Rico corporation entered into a distributor agreement with co-defendant Nokia–Mobira, a Florida corporation for the exclusive distribution of co-defendant's products in Puerto Rico. The agreement provided that at the option of Nokia–Mobira any dispute arising under the same could be submitted to arbitration in Florida in accordance with the rules of the American Arbitration Association.

The arbitration provision provides in relevant part as follows:

At the option of Nokia–Mobira, however, which must be exercised in writing by registered or certified mail, any dispute arising hereunder shall be settled in Florida before the American Arbitration Association pursuant to the association rules then in effect and the arbitration award shall become binding on the parties.

Relying on this provision, Nokia–Mobira moved to compel arbitration of plaintiff's claims pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, and requested that the present action be dismissed or that these proceedings be stayed pending arbitration.

The issue before us is whether we should enforce an agreement to arbitrate when it involves a domestic transaction covered by local antitrust law which forecloses the intended arbitration. *See* 10 L.P.R.A. §§ 278–278d (Law No. 75 of June 23, 1978).

The Federal Arbitration Act (the Act), 9 U.S.C. § 1 *et seq.* provides the starting block for our analysis. Specifically, Section 2 of the Act states in relevant part:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The Act establishes a federal policy favoring arbitration, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) requiring that we vigorously enforce agreements to arbitrate. *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). The above cited provision and the Act as a whole manifest a liberal federal policy favoring arbitration agreements, *Moses H. Cone Memorial Hospital*, 460 U.S. at 24, 103 S.Ct. at 941; and creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. *Id.* at 25, n. 32, 103 S.Ct. at 942, n. 32.

Faced with a request to compel arbitration, we must determine whether the parties agreed to arbitrate the dispute and apply the federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act. *Moses H. Cone Memorial Hospital*, 460

U.S. at 24, 103 S.Ct. at 941; *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 400–404, 87 S.Ct. 1801, 1804–06, 182 L.Ed.2d 1270 (1967); *Southland Corp. v. Keating,* 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984). That body of law advises

> that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration ... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. at 941–42.

Absent compelling considerations such as the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract, 9 U.S.C. § 2, *Southland Corp.,* 465 U.S. at 16, n. 11, 104 S.Ct. at 861, n. 11; The *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972), agreements to arbitrate must be enforced. *Dean Witter Reynolds, Inc.,* 470 U.S. at 218, 105 S.Ct. at 1241.

Although plaintiff concedes that the Federal Arbitration Act compels the enforcement of arbitration clauses in international agreements, it contends the present case involves a domestic antitrust matter which is not subject to arbitration according to *American Safety Equipment Corp. v. J.P. Maguire & Co.,* 391 F.2d 821 (2d Cir.1968). Since plaintiff's arguments fail to persuade us that domestic antitrust matters require different treatment than international agreements governed by federal antitrust laws, we disagree.

In *Mitsubishi Motors v. Soler Chrysler Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), the Court found that respondents' antitrust claims were arbitrable pursuant to the arbitration act. The Court carefully scrutinized the *American Safety* doctrine in the international context and, after addressing each of its four ingredients, it nevertheless proceeded to enforce the arbitration agreement. Regarding the exception contained in *American Safety* the Court noted that:

> Notwithstanding the absence of any explicit support for such an exception in either the Sherman Act or the Federal Arbitration Act, the Second Circuit there reasoned that "the pervasive public interest in enforcement of the antitrust laws, and the nature of the claims that arise in such cases, combine to make ... antitrust claims ... inappropriate for arbitration."

*Mitsubishi Motors,* 473 U.S. at 629, 105 S.Ct. at 3355. Finding it unnecessary, the Court did not address the legitimacy of the *American Safety* doctrine as applied to agreements to arbitrate arising from domestic transactions. Legal developments occurring after the Second Circuit's ruling was issued approximately twenty years ago have significantly eroded its vitality to the extent that the Supreme Court, if confronted squarely with the issue of its continued applicability, would most certainly discard said doctrine.

The *American Safety* doctrine incorporates the following four ingredients: 1) private parties play a pivotal role in assisting governmental enforcement of the antitrust laws by means of the private action for treble damages; 2) the strong possibility that contracts which generate antitrust issues may be contracts of adhesion militates against automatic forum determination by contract; 3) antitrust issues, prone to complication, require sophisticated legal and economic analysis, and therefore are ill-adapted to strengths of the arbitral process, *i.e.,* expedition, minimal requirements of written rationale, simplicity, resort to basic concepts of common sense and simple equity; and 4) just as issues of war and peace are too important to be vested in the generals, ... decisions as to antitrust regulation of business are too important to be lodged in arbitrators chosen from the business community—particularly those from a foreign community that has had no experi-

ence with or exposure to our law and values. *See American Safety,* 391 F.2d at 826–827.

Each of these concerns was addressed by the Court in *Mitsubishi Motors* and found to be lacking. In so doing, the Court reasoned that the mere appearance of an antitrust dispute did not warrant invalidation of the selected forum absent a showing that the arbitration clause was tainted. A party could attempt to make a showing that would justify setting aside the forum-selection clause such as that the agreement was affected by fraud, undue influence, or overweening bargaining power; that enforcement would be unreasonable and unjust; or that proceedings in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court. *The Bremen,* 407 U.S. at 12, 15, 18, 92 S.Ct. at 1914, 1916, 1917. Absent such a showing as in the present case, there is no basis for assuming the forum inadequate or its selection unfair.

The Court also determined that the potential complexity of antitrust matters alone was not sufficient to ward off arbitration. In this respect, it was noted that adaptability and access to expertise are hallmarks of arbitration, that the anticipated subject matter of the dispute could be taken into account when appointing the arbitrators, and that arbitral rules usually provided for the participation of experts. It also rejected "the proposition that an arbitration panel will pose too great a damage of innate hostility to the constraints on business conduct that antitrust law imposes." *Id.,* 473 U.S. at 634, 105 S.Ct. at 3357. The Court declined to indulge the presumption that the parties and arbitral body would be unable or unwilling to retain competent, conscientious and impartial arbitrators.

It then addressed the final concern which it considered the core of the *American Safety* doctrine, "the fundamental importance to American democratic capitalism of the regime of the antitrust laws." *Id.,* at 634, 105 S.Ct. at 3357. It recognized that the private cause of action played a vital role in enforcing this regime. The Court after examining the legislative intent behind Section 4 of the Clayton Act, emphasized that the primary function of the treble damages cause of action was compensatory. It noted that the prospective litigant could provide in advance for a mutually agreeable procedure whereby he would seek his antitrust recovery and settle other controversies. It concluded that "so long as the prospective litigant may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.* at 637, 105 S.Ct. at 3359; *see also Shearson/American Express v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Although the holding in *Mitsubishi* was limited to international transactions, we find that this reasoning should apply with equal force in the domestic context. Clearly, the mistrust of arbitration that formed the basis for the *American Safety* case in 1968 does not conform with the assessment of arbitration which has prevailed since then.

In *Shearson/American Express, supra,* the Supreme Court relying heavily upon *Mitsubishi,* held that both RICO claims and claims brought under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) were subject to arbitration. It reaffirmed the holding of *Mitsubishi* to the effect that arbitral tribunals were readily capable of dealing with the factual and legal complexities of antitrust claims: that there was no reason to assume at the outset that arbitrators would not follow the law, and that although judicial scrutiny of arbitration awards was limited, the same was sufficient to ensure that arbitrators complied with the requirements of the statute. *Id.,* 482 U.S. at 232, 107 S.Ct. at 2340. Moreover, in *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court emphasized certain considerations in the context of an international arbitration agreement which also apply in the present situation:

A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is ... an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction ...

A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mentally destructive jockeying by the parties to secure tactical litigation advantages ...

[It would] damage the fabric of international commerce and trade, and imperil the willingness and ability of business to enter into international commercial agreements.

417 U.S. at 516–517, 94 S.Ct. at 2455–56. Consequently, Alberto–Culver Co. was required to honor its bargain and compelled to seek its remedies before the international arbitral tribunal as agreed upon by the parties. *See also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (a dealership case in which the Court voiced similar considerations in the context of a forum-selection clause). Thus, the recent Supreme Court decisions point toward increased recognition of the federal policy favoring arbitration and away from the *American Safety* doctrine, which we think—with all due deference—has become invalid.

In conclusion, we find that the Federal Arbitration Act compels the enforcement of the arbitration clause in the distributorship agreement executed by Nokia–Mobira and Cellular One. The antitrust laws of the Commonwealth of Puerto Rico cannot dictate a different result. Thus, all claims asserted in the complaint including the antitrust claims must be submitted to arbitration.

Wherefore, in view of the foregoing, co-defendant Nokia–Mobira's motion is hereby GRANTED and the present proceedings are hereby stayed pending arbitration. Once arbitration has concluded, the parties are instructed to inform the court if any further matters remain for disposition in this forum.

SO ORDERED.