930 F.2d 762
 C.H.I. INC., d.b.a. C.H. Sport, Plaintiff-Appellant,
v.
MARCUS BROTHERS TEXTILE, INC., and does 1 through 15,
inclusive, Defendants-Appellees.
 No. 90-55960.
 United States Court of Appeals,
Ninth Circuit.
 Submitted April 1, 1991*.
Decided April 16, 1991.
 
 Michael C. Baum, Tucker & Baum, Los Angeles, Cal., for plaintiff-appellant.
 Elizabeth F. Skoler, Proskauer Rose, Goetz & Mendelsohn, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before BOOCHEVER, KOZINSKI and O'SCANNLAIN, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 C.H.I. appeals the district court's dismissal for failure to arbitrate its breach of contract claim against Marcus Brothers. C.H.I. argues that the arbitration clause in the Marcus Brothers' confirmation form is unenforceable because: 1) it is an adhesion contract; 2) C.H.I. did not knowingly consent to arbitration; 3) C.H.I. signed it under economic duress; and, 4) its terms lacked specificity. We AFFIRM.
 
 BACKGROUND
 
 2
 During the fall of 1989, C.H.I., a California corporation, submitted several fabric purchase orders to Marcus Brothers, a New York corporation. The orders stated, "[p]urchaser and supplier agree that any disputes arising between them shall be subject to the jurisdiction of the courts of the State of California and further agree that the laws of the State of California shall be applied to resolve any such disputes." Marcus Brothers responded to each order with a contract confirmation form which C.H.I.'s president signed. The Marcus Brothers' form stated, "[t]his confirmation is subject to all of the terms and conditions on the face and reverse side hereof, including the provision for arbitration ..., all of which are accepted by buyer, supersede buyer's order form if any, and constitute the entire contract between buyer and seller...." On the back of the Marcus Brothers' form was a standard arbitration clause designating New York as the place of arbitration.
 
 
 3
 In March, 1990, C.H.I. filed a complaint for breach of contract and declaratory relief in California Superior Court. In April, 1990, the Marcus Brothers' petition to remove the case to the United States District Court for the Central District of California was granted on the basis of diversity of citizenship. In June, 1990, the court granted Marcus Brothers' motion to dismiss for failure to arbitrate.
 
 DISCUSSION
 
 4
 Questions of subject matter jurisdiction and dismissal under the Federal Arbitration Act are reviewed de novo. Teledyne, Inc. v. Kone Corp., 892 F.2d 1404, 1406 (9th Cir.1990) (citations omitted). Section 2 of the Federal Arbitration Act provides that:
 
 
 5
 A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
 
 
 6
 9 U.S.C. Sec. 2 (1988). The Supreme Court has established that this provision supersedes state law regarding arbitrability and that it constitutes a congressional declaration liberally favoring arbitration notwithstanding contrary state substantive or procedural policies. Bayma v. Smith Barney, Harris Upham and Co., Inc., 784 F.2d 1023, 1024 (9th Cir.1986) (citing Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) and Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).
 
 
 7
 C.H.I. argues that it did not knowingly agree to arbitrate and that even if it did, the Marcus Brothers' form should be rejected as an adhesion contract. It claims that during oral negotiations neither party mentioned arbitration. Moreover, its own purchase form, which made no mention of arbitration, clearly provides that any disputes be resolved in California courts pursuant to California law. C.H.I. alleges that it signed the Marcus Brothers' confirmation form under duress as it had made commitments to third parties which depended upon receipt of the fabric.
 
 
 8
 Federal case law supports the district court's dismissal for failure to arbitrate. As in this case, N & D Fashions, Inc. v. DHJ Industries, Inc., 548 F.2d 722 (8th Cir.1977), involved a fabric manufacturer and purchaser who orally agreed to the purchase of fabric. N & D, as purchaser, subsequently sent DHJ a purchase order which did not contain an arbitration clause. DHJ returned four confirmation forms which N & D's agent officer signed. Each form stated, "this contract is subject to all the terms and conditions printed on the reverse side." Id. at 724. The reverse side contained sixteen terms, including a standard arbitration agreement. N & D subsequently brought suit for misrepresentation and fraud. The Eighth Circuit reversed the district court's ruling that the arbitration clause was void as a material alteration of the initial contract. It found that, by signing the confirmation forms, N & D expressly agreed to its provisions:
 
 
 9
 ... While a party may not be subjected to a provision which materially alters the contract by failing to object to it, he cannot avoid the effect of his written acceptance of a contract which expressly, above his signature on the face of the contract, incorporates the provisions on the reverse side of the document.
 
 
 10
 Id. at 727. As Marcus Brothers points out, its case against C.H.I. is even more compelling than N & D Fashions because its arbitration provision was specifically mentioned on the face of the confirmation form, directly above the signature line.
 
 
 11
 C.H.I. provides no evidence to establish that this was an adhesion contract entered into under fraud and economic duress. It instead gives only conclusory statements referring to the initial oral agreement, unequal bargaining power and a "last minute" refusal to ship. C.H.I. does not deny that its president actually read and signed the confirmation forms. Indeed, the fact that C.H.I. alleges Marcus Brothers would not ship an order until C.H.I. signed the corresponding confirmation form indicates C.H.I.'s knowledge of provisions it was hesitant to adopt as part of the bargain.
 
 
 12
 Due to the lack of evidence substantiating C.H.I.'s claims, and since C.H.I.'s president knowingly signed the confirmation forms, we do not find that this was an adhesion contract nor that C.H.I. was coerced into signing it under economic duress.
 
 
 13
 In the alternative, C.H.I. claims that even if the arbitration clause was mutually agreed to, it is nevertheless unenforceable as "fatally ambiguous" and lacking in mutuality of remedy. The question of whether an ambiguity exists is a matter of law. Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1428 (9th Cir.1986). "An ambiguity exists when there is doubt as to what written words mean." Id. (citation omitted). In ordering dismissal for failure to arbitrate, the district court necessarily found that the arbitration provision was not intolerably ambiguous or lacking in mutuality, and thus was enforceable. We agree.
 
 
 14
 To substantiate its ambiguity claim, C.H.I. cites the language of the arbitration clause stating that disputes are to be resolved by "the American Arbitration Association or its division, the General Arbitration Council of the Textile and Apparel Industries whichever shall be selected by the party instituting said arbitration." C.H.I. argues that, because the clause give two alternatives, to be chosen by the instituting party at a future date, it lacks certainty of essential terms and therefore is not specifically enforceable.
 
 
 15
 This position is not, however, compatible with Restatement of Contracts (2d) Sec. 34(1)(1987) which provides that "[t]he terms of a contract may be reasonably certain even though it empowers one or both parties to make a selection of terms in the course of performance." Here, the arbitration provision provides two alternatives for dispute resolution at the election of the party instituting arbitration. Both options are definitely established. The means by which the option is to be chosen, by the party instituting said arbitration, is also given in unambiguous terms. We find that there is no real doubt as to what the disputed terms of the arbitration provision mean. The provision is not, therefore, "fatally ambiguous" and unenforceable.
 
 
 16
 Nor does the provision suffer from lack of mutuality of remedy. Unlike Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), where the Supreme Court rejected an arbitration agreement that could be invoked at the option of the union only, here arbitration may be invoked by either party at any time. Hence, mutuality exists.
 
 CONCLUSION
 
 17
 The arbitration agreement was not part of an adhesion contract which C.H.I. unknowingly entered into under economic duress. The agreement was sufficiently specific and provided for mutuality of remedy. We AFFIRM.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)