**DJ MANUFACTURING CORPORATION,**
Plaintiff,

v.

**TEX–SHIELD, INC., et al., Defendants.**

No. 97–1457(SEC).

United States District Court,
D. Puerto Rico.

March 31, 1998.

Eugene F. Hestres-Vélez, Bird, Bird & Hestres, San Juan, PR, for Plaintiff.

Daniel M. Bbuhoff, Robert H. Hotz, Debevoise & Plimpton, New York, NY, Armando Lasa-Ferrer, Lasa Monroig & Veve, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendant Tex–Shield, Inc.'s ("Tex–Shield") Motion for a Stay Pending Arbitration, or, in alternative, for Dismissal, and Stay of Discovery (Docket # 6). Plaintiff DJ Manufacturing Corporation ("DJM") filed an opposition to Tex–Shield's motion (Docket # 13). Subsequently, Tex–Shield was granted leave to file a reply to DJM's opposition, which it did

(Docket # 19). For the reasons stated below in this Opinion and Order, Tex–Shield's Motion for a Stay Pending Arbitration, or in alternative, for Dismissal, and Stay of Discovery (Docket # 6) is **GRANTED IN PART, DENIED IN PART,** and **MOOT IN PART.**

### Factual Background

For purposes of this order, we shall outline the relevant facts as they stem from the allegations in the complaint in the above-captioned action. Plaintiff, DJM, is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico that manufactures complex sewn clothing and equipage for United States military agencies. It is a small disadvantaged business as that term is utilized in regulations governing federal contracts, and is a certified participant in the Small Business Administration's ("SBA") 8(a) program for contract set-asides for small businesses.

Defendant Tex–Shield is a corporation organized under the laws of Delaware, with its principal place of business in Mount Laurel, New Jersey. It is a wholly-owned subsidiary of a German corporation, Blucher GmbH, which holds a patent for certain technology used to produce chemical protective cloth which can be sewn into chemical protective garments purchased by agencies and departments of the United States Military.

In July of 1993 the United States Air Force ("USAF") issued a solicitation for bids for the sale of 40,000 Chemical Defense Coveralls (hereinafter "the Air Force solicitation"). Said procurement was limited to businesses participating in the SBA's 8(a) program, such as DJM. DJM was awarded the contract for the Air Force solicitation for the sale of 40,000 coveralls at a unit price of $375.15, for a total contract price of $15,000,-000. The USAF specified that the coveralls produced must be manufactured using a chemical protective material known as "Saratoga Filter Cloth;" Tex–Shield was named as the sole approved source for the cloth.

After DJM was awarded the USAF contract, DJM and Tex–Shield entered into a subcontract (the "subcontract") which provided that DJM would buy the Saratoga Filter

Cloth from Tex–Shield at a price of $49.27 per yard. Subsequently, DJM and Tex–Shield entered into a "technical services" contract whereby Tex–Shield agreed to provide DJM with certain technical services for a fee of $35,000 a month for a period of twelve months.

The subcontract entered into by DJM and Tex–Shield contained a clause providing for the arbitration of all disputes between them arising under or relating to said subcontract. Clause 11(A) of the subcontract reads as follows:

> Prime Contractor and Subcontractor agree to binding arbitration of all disputes between them arising under or relating to this Subcontract that cannot otherwise be resolved between the parties. Except as otherwise agreed by the parties, such arbitration shall be conducted in the city of New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

On June 24, 1994 the Defense Personnel Support Center ("DPSC") issued a solicitation for proposals for the sale of a minimum of 100,000 chemical and biological suits and for an additional quantity at the option of the DPSC. As with the Air Force solicitation, the DPSC solicitation was also limited to SBA 8(a) program participants. These suits were also to be made from Saratoga Filter Cloth, and once again, Tex–Shield was the sole approved source for the cloth.

Pursuant to the DPSC solicitation, Tex–Shield quoted DJM a price of $38.71 per yard for the first 100,000 suits, and $41,000 per yard for any additional quantity. In addition, Tex–Shield sent a proposal to DJM to sell DJM the Saratoga Filter Cloth in the form of pre-cut kits at $148.95 for the first 100,000 kits, and for $154.43 for any additional quantity. In light of those numbers, DJM proposed to the DPSC a bid price of $187.62 for the first 100,000 suits, and $193.50 for any additional quantity. DJM was not awarded the DPSC contract, which instead was awarded to Creative Apparel Associates, which had bid $179.55 for the first 100,000 suits, and $186.02 for any additional quantity.

**Procedural History**

DJM's complaint against Tex–Shield contains four counts, all of which allege violations of various federal antitrust statutes. Count One alleges that Tex–Shield's demand that DJM purchase its "technical services" in addition to the Saratoga Filter Cloth it required for the USAF contract constituted an illegal tie-in arrangement in violation of the Sherman Act. In addition, in Count Two, DJM alleges that Tex–Shield engaged in price discrimination against DJM in the pricing of the Saratoga Filter Cloth in relation to the USAF contract in violation of Section 2(a) of the Robinson–Patman Act.

Count Three of the complaint contains allegations that Tex–Shield committed price discrimination against DJM in relation to the DPSC contract, characterized as an unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Section 3 of the Clayton Act. In Count Four of the complaint, DJM alleges that Tex–Shield price discriminated against DJM in relation to the DPSC contract, in violation of Section 2(a) of the Robinson–Patman Act.

In response to DJM's complaint, Tex–Shield filed the above-mentioned motion (Docket # 6). In said motion, Tex–Shield requests that the instant litigation be stayed pending arbitration pursuant to the mandate contained in Section 3 of the Federal Arbitration Act ("FAA"). In the alternative, Tex–Shield requests that the above-captioned action be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief can be granted. In addition, Tex–Shield requests a stay of discovery in the case while the motion is *sub judice*.

In its reply to Tex–Shield's motion, DJM asserts that the arbitration clause does not cover the asserted antitrust claims because the arbitration agreement contained in the subcontract should be construed narrowly. In the alternative, DJM argues that the arbitration clause in the subcontract should be found void and unenforceable because it was the product of duress. DJM contends that "but for the overwhelming economic and monopoly power of [Tex–Shield], it is inherently improbable that Plaintiff would relinquish its right to a free Presidentially selected, Senate

confirmed Judge, in favor of private, costly arbitrators." **(Docket # 13, page 8).**

## Applicable Law/Analysis—Enforceability and Scope of the Arbitration Clause

In order to address whether DJM's pending claims against Tex–Shield are subject to arbitration, we must first determine there is a valid arbitration agreement between the parties, and whether the claims in the above-captioned complaint fall within the scope of the arbitration clause in the subcontract. In addition, we must determine whether antitrust claims, such as the ones alleged by DJM in this case, are arbitrable under Section 3 of the FAA, 9 U.S.C. § 1, et seq. For the reasons set forth below, we find that some of DJM's claims against Tex–Shield are subject to arbitration because they fall within the scope of the subcontract and its arbitration clause, but that some of the claims are not subject to arbitration because they are not in any way related to the subcontract entered into by the parties. Furthermore, following the lead of the circuits that have dealt with the issue after the Supreme Court's decision in *Mitsubishi, infra,* we find that domestic antitrust claims are subject to arbitration under Section 3 of the FAA.

Section 3 of the FAA provides for a mandatory stay of court proceedings pending the outcome of arbitration. It states as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,* providing the applicant for the stay is not in default in proceedings with such arbitration.

9 U.S.C. § 3, emphasis added.

The language of the statute is clear: when an agreement between the parties contains an arbitration clause and the claims being litigated fall within the scope of the clause, a stay pending arbitration of the claims is mandatory, not discretionary. *See Acevedo Mal-donado v. PPG Industries, Inc.,* 514 F.2d 614, 616 (1st Cir.1975) ("Section 3 of the [FAA] requires a federal court in which suit has been brought ... to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement."); *McCain Foods Ltd. v. Puerto Rico Supplies, Inc.,* 766 F.Supp. 58, 60 (D.Puerto Rico, 1991) ("It is well-established that once there is a binding agreement to arbitrate, courts lack discretion and must enforce the agreed-upon arbitration proceeding.").

The Supreme Court has held that when a court is determining whether a particular claim is subject to arbitration, "any doubts concerning the scope of arbitrable issues ... should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). *See also GKG Caribe, Inc. v. Nokia–Mobira, Inc.,* 725 F.Supp. 109, 111 (D.Puerto Rico, 1989). Moreover, arbitration should be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

▬ That said, "[a]rbitration has been characterized by the Supreme Court as being a creature of contract. It is the general rule that parties cannot be required to submit disputes to arbitration unless they have agreed to do so." Eric James Fuglsang, *The Arbitrability of Domestic Antitrust Disputes: Where Does the Law Stand?,* 46 DePaul L.Rev. 779, 784 (1997). Parties cannot be forced to arbitrate claims that are not within the scope of the agreement. As stated by the Tenth Circuit in *Coors Brewing Company v. Molson Breweries,* 51 F.3d 1511, 1514 (10th Cir.1995), any claim that has a "reasonable factual connection to the contract is arbitrable." However, "[a]n arbitration clause 'does not extend to all disputes of any sort ... but only to disputes touching specified provisions of the agreement.' " *Id.*

at 1516, *quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 723 F.2d 155, 159 (1st Cir.1983), *aff'd in part and rev'd in part,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). An arbitration clause in an agreement between the parties cannot be held to extend to all disputes between those two parties, unless they are somehow linked to the provisions of the contract. *Coors,* 51 F.3d at 1516 ("Although *Mitsubishi* allowed parties to a contract to compel the arbitration of their antitrust disputes, it did not proclaim that all disputes between parties who include an arbitration clause in their contract is still a condition precedent to the involuntary arbitration of antitrust claims.")

In *Medika International, Inc. v. Scanlan International, Inc.,* 830 F.Supp. 81, 84 (D.Puerto Rico, 1993), this Court undertook a three-pronged analysis to determine whether a particular dispute between parties was subject to arbitration under the FAA. In the first step, the Court must look at the contract to determine whether it contains an arbitration clause. *Id.* Then, if the arbitration clause does exist, the Court must determine whether the dispute arising under the contract falls within the scope of the arbitration clause. *Id.* Finally, "[i]f an arbitration clause exists and the controversy falls under the scope of this clause, then [the Court] will direct the parties to proceed to arbitration on the issues as to which the arbitration agreement was signed unless a ground for the revocation of the contractual agreement exists." *Id.*

■ Undertaking this three-pronged analysis, we find, first, that there is an arbitration clause that binds the parties in this case. That said, we must analyze whether the claims filed by DJM against Tex–Shield in this case fall within the scope of the arbitration clause. The First Circuit has found that "contracting parties control their own fate when it comes to deciding which disputes to consign to arbitration." *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress, Int'l, Ltd.,* 1 F.3d 639, 643 (1st Cir.1993). Therefore, in evaluating whether a claim is subject to arbitration, the language of the arbitration clause dictates whether a particular claim is subject to arbitration. "Not surprisingly, the broad

and inclusive language of the standard arbitration clause, coupled with the difficulty of determining whether a dispute 'arises under' a contract, has engendered considerable difficulty in interpretation and application." *Fuglsang, supra,* at 785.

As stated above, all doubts regarding the proper scope of an arbitration clause should be resolved in favor of arbitration. While that is so, the broad reach of an arbitration clause is not infinitely elastic. There are constraints to the scope of an arbitration clause, even one written in such broad terms as the one in the subcontract between DJM and Tex–Shield. As held by the Tenth Circuit, "*Mitsubishi* provides not support for categorically concluding that [plaintiff] must take all of its antitrust claims to arbitration. We therefore hold that [plaintiff's] antitrust claims that do not implicate the contract are litigable." *Coors,* 51 F.3d at 1516.

■ In this case, we find that DJM's claims against Tex–Shield contained in Counts One and Two of the Complaint fall within the scope of the arbitration clause in the subcontract. These claims of illegal tie-in and price discrimination in relation to the USAF contract clearly relate to the subcontract entered into by the parties. Therefore, we must stay the present proceedings as to those two claims and compel the parties to submit them to arbitration. However, we also find that DJM's claims of price discrimination and illegal restraint of trade regarding the DPSC solicitation process, contained in Counts Three and Four of the complaint, do not fall within the scope of the arbitration clause. There was never an agreement between the parties regarding the DPSC solicitation; therefore, there was no contractual relationship between DJM and Tex–Shield that would compel arbitration of these claims. To hold otherwise would be an inappropriate broadening of the scope of the arbitration clause contained in the subcontract. Just because two parties agreed to arbitrate certain disputes relating to one contract does not mean that they are forever bound to arbitrate all subsequent disputes that may arise between them regarding wholly unrelated transactions.

■ In holding the above, we also hold that domestic antitrust disputes, such as the ones in the present case, are arbitrable. While the First Circuit has not directly addressed the issue, we find that recent Supreme Court caselaw has indicated a shift in attitude toward the desirability of arbitration of statutory issues, away from the rationale of the Second Circuit in *American Safety Equipment Corp. v. J.P. Maguire & Co.,* 391 F.2d 821 (2d Cir.1968). In *American Safety,* the Second Circuit held that, for various policy reasons, antitrust disputes were inarbitrable. In *Mitsubishi,* the Supreme Court held that antitrust disputes arising in the international commercial context may be arbitrated pursuant to a contractual arbitration clause.

Even though the Court did not address the issue of arbitrability of antitrust issues in the domestic arena, it seriously undermined the rationale espoused by the Second Circuit in *American Safety* regarding the propriety of arbitration of antitrust issues in general. As a result of the *Mitsubishi* decision, and the strong trend demonstrated in other Supreme Court decisions favoring arbitrability, most lower courts have held that arbitration agreements are enforceable as applied to domestic, as well as international, antitrust claims. *See, e.g., Kotam Electronics, Inc. v. JBL Consumer Products, Inc.,* 93 F.3d 724, 728 (11th Cir.1996); *Coors, supra; Nghiem v. NEC Electronic, Inc.,* 25 F.3d 1437, 1442 (9th Cir.1994) ("Given the Court's meticulous step-by-step disembowelment of the *American Safety* doctrine, this circuit will no longer follow *American Safety.*"). *See also Hunt v. Up North Plastics, Inc.,* 980 F.Supp. 1046, 1050 (D.Minn.1997); *Acquaire v. Canada Dry Bottling,* 906 F.Supp. 819, 837 (E.D.N.Y. 1995); *Western International Media Corp. v. Johnson,* 754 F.Supp. 871, 874 (S.D.Fla. 1991); *GKG Caribe, supra.* We follow their lead, and hold that domestic antitrust disputes fall under the mandate of arbitration of Section 3 of the FAA.

**DJM's claim of duress must fail**

■ In the event that we were to interpret the arbitration clause in the subcontract broadly enough to encompass the antitrust claims at issue here, DJM argues that the Court should not enforce the arbitration clause because it was the product of duress due to Tex–Shield's monopoly power. However, DJM's bare allegations of duress and Tex–Shield's overwhelming economic power are insufficient on their face for this Court to find the agreement unenforceable. This Court has rejected that very same argument in *McCain Foods,* 766 F.Supp. at 60, where it stated the following:

> PRS alleges overwhelming economic pressure and duress on the part of McCain to force PRS to agree on an arbitration clause. These allegations, however, are unsupported and conclusory. Defendant, without more, merely states that 'said capitulation by PRS was the result of McCain's acts of overwhelming economic pressure and duress on PRS.' In light of the foregoing, we must presume that PRS entered into the agreement voluntarily.

The Court's holding in *McCain Foods* applies with full force to the present case. Mere allegations of monopoly control and overwhelming economic power, without more, will not suffice for this Court to invalidate an agreement to arbitrate which we must presume valid. *See also C.H.I., Inc. v. Marcus Bros. Textile, Inc.,* 930 F.2d 762, 764 (9th Cir.1991) (holding that conclusory statements regarding unequal bargaining power and last minute refusal to ship goods were not sufficient to void agreement to arbitrate disputes as product of duress).

Furthermore, the fact that the arbitration clause applies equally to both parties, rather than just the plaintiff, lends further credence to the presumption that this is a valid agreement between the parties. *See Webb v. Investacorp.,* 89 F.3d 252, 259 (5th Cir.1996) ("[T]he arbitration clauses themselves are not one-sided in the sense that they cause [plaintiff] to relinquish [its] access to the courts because, by the same provisions, [defendant] has relinquished the same right."). DJM's argument of duress must therefore fail; the arbitration clause in the subcontract is valid and will be fully enforced by this Court.

**The resolution of the non-arbitrable claims should also be stayed**

■ "The decision whether to stay nonarbitrable claims pending arbitration is largely

within the discretion of the trial court." *Acquaire,* 906 F.Supp. at 838, *citing Moses H. Cone,* 460 U.S. at 20, n. 23. The First Circuit has held that when plaintiff's claims are interrelated and arbitration "could serve to 'clarify and perhaps even simplify the remaining issues which must be litigated,'" a stay of both the arbitrable and the non-arbitrable claims is within the trial court's sound discretion. *Sevinor v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 807 F.2d 16, 20 (1st Cir.1986).

We agree with the district court's cogent finding in *Acquaire,* that in this case

> [i]t appears at the very least that significant insight will be afforded the Court and the parties by the conduct and result of the arbitration, and that this insight will prove valuable in resolving the remaining claims. A stay of all remaining claims, then, 'would promote judicial economy, avoidance of confusion, and possible inconsistent results and would not work undue hardship or prejudice' against plaintiff[].

*Acquaire,* 906 F.Supp. at 838, *quoting Meadows Indem. Co. v. Baccala & Shoop Ins. Services, · Inc.,* 760 F.Supp. 1036, 1045 (E.D.N.Y.1991). We thus find that while DJM's claims contained in Counts Three and Four of the complaint are nonarbitrable, they should nevertheless be stayed pending the outcome of the arbitration of the arbitrable claims.

## Conclusion

Pursuant to the above discussion, the Court holds that domestic antitrust disputes, such as the ones at issue in the present case, are subject to arbitration and are within the scope of the mandate of Section 3 of the FAA. Furthermore, we find that there was a valid arbitration agreement between DJM and Tex–Shield; we will not void it based it on bare assertions of overwhelming monopoly power and economic duress. In addition, we find that the scope of the arbitration clause of the subcontract includes DJM's antitrust claims against Tex–Shield in Counts One and Two of the complaint. In light thereof, the Court hereby **ORDERS** that the allegations contained in Counts One and Two of the Complaint be subjected to arbitration, as directed by the terms of the arbitration clause in the subcontract.

On the other hand, we find that DJM's allegations in Counts Three and Four do not fall within the scope of the arbitration clause of the subcontract between DJM and Tex–Shield. Nevertheless, utilizing our discretion, we will **STAY** the above-captioned action in its entirety, both the arbitrable and the non-arbitrable claims, pending the outcome of arbitration as to Counts One and Two.

In summary, defendant Tex–Shield's Motion for a Stay Pending Arbitration, or in the Alternative for Dismissal, and a Stay of Discovery **(Docket # 6)** is **GRANTED IN PART** and **DENIED IN PART.** The above-captioned matter will be stayed pending the outcome of the arbitration of Counts One and Two of the complaint. Once arbitration has concluded on the first two counts, the above-captioned matter will be reopened. We shall not entertain Tex–Shield's alternative request for dismissal because we have decided the motion based on defendant's primary request. Tex–Shield's alternative motion to dismiss **(Docket # 6)** is therefore **DENIED.** Finally, Tex–Shield's request for a stay of discovery while its motion was *sub judice* **(Docket # 6)** is now **MOOT.**

**SO ORDERED.**