**CODECOM, INC., Plaintiff,**

v.

**ALCATEL STANDARD, S.A., et al., Defendants.**

**No. CIV. 99–2340 (RLA).**

United States District Court, D. Puerto Rico.

July 5, 2000.

### ORDER DENYING MOTION RE-QUESTING ORDER COMPEL-LING ARBITRATION

ACOSTA, District Judge.

Presently pending before the Court is a request by defendants, collectively identified as the "Alcatel Defendants",[1] for an order compelling arbitration of the claims asserted in the complaint.

The Court having considered the arguments presented by the parties hereby finds that the controversy at hand is not comprised within the ambit of the arbitration clause included in the various agreements reached by the parties and therefore, the petition is **DENIED**.

### I. PROCEDURAL BACKGROUND

This action was originally instituted in Superior Court of Puerto Rico against the Alcatel Defendants and certain unnamed parties asserting violations of the Puerto Rico Sales Representatives Act, Act No. 21 of December 21, 1990 ("Law 21") P.R. Laws Ann. tit. 10, §§ 279 *et seq.* (1997 & Supp.1999), or of the Puerto Rico Distributors Act, Act No. 75 of June 1964 ("Law 75"), P.R. Laws Ann. tit. 10, §§ 278 *et seq.* (1997) as well as a claim for failure to negotiate in good faith.

The case was subsequently removed to this forum by the Alcatel Defendants based on diversity jurisdiction. Thereafter, the Alcatel Defendants filed their Motion to Compel Arbitration which was duly opposed by the plaintiff.

### II. THE FACTS

According to the evidence in the record discussions regarding the possibility of appointing plaintiff as the Codecom Defendants' sales representative in the Caribbean commenced in **1993**. There is ample evidence of ongoing attempts to enter into a written agreement through exchanges of

Herman Cestero–Rodriguez, Ernesto F. Rodriguez–Suris, Hato Rey, PR, for Plaintiff.

Pedro Jimenez–Rodriguez, Michael C. McCall, Gonzalez Oliver, Correa Calzada, Collazo Salazar, Herrero & Jimenez, San Juan, PR, for Defendants.

1. Named defendants are: (1) Alcatel Standard, S.A., (2) Alcatel U.S.A., (3) International Marketing, Inc., (4) Alcatel Systems International, Inc, and (5) Alcatel Network Systems, Inc.

drafts and counter-proposals dated **December 1993, February, April, August, and September 1994, April, August, and September 1995.** These efforts came to an end via a letter dated **February 2, 1999** whereby the Alcatel Defendants advised plaintiff that it had "decided to terminate is Representative Agreement with [plaintiff] effective immediately." The hurdle to the negotiations was the Alcatel Defendants' concern with the provisions of Law 21 and Law 75 which, according to the letter, "virtually preclude the termination or cessation of a representative agreement once that agreement is established." [2]

Parallel to these contract negotiations the parties entered into various agreements whereby plaintiff was appointed to represent the Alcatel Defendants in specific bidding processes. Each such agreement, valid for limited period of time, delineated plaintiff's duties and responsibilities as well as the corresponding fees. The agreements contained an identical provision cautioning that it was "not intended to establish a long term arrangement, or appoint [plaintiff] as a dealer, agent or representative [of the Alcatel Defendants] but [was] limited to the specific task ... specified [in the agreement]." [3]

Each of these agreements also contained an identical arbitration clause which provided as follows:

> 5 All disputes arising in connection with this Agreement which have not been first amicably settled between the parties shall be finally settled in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce by three (3) arbitrators to be appointed in accordance with such Rules, unless the parties hereto agree on the appointment of a sole arbitrator.
>
> Arbitration shall take place in New York and shall be conducted in the English language. The applicable law shall be the Law of the State of Delaware (USA).

## III. ARBITRATION

### A. The Law

Except for limited exceptions,[4] Puerto Rico's Law 21 and Law 75 have identical provisions which "govern[ ] the business relationship between principals and the locally appointed [sales agents or] distributors/dealers for marketing their products." [The statutes seek] to avoid the inequity of arbitrary termination of [these] relationships once the designated agent or dealer had successfully developed a local market for the principal's products and/or services. *Irvine v. Murad Skin Research Lab., Inc.,* 194 F.3d 313, 317 (1st Cir.1999); *Sheils Title Co., Inc. v. Commonwealth Land Title Ins. Co.,* 184 F.3d 10, 17 (1st Cir.1999); *Euromotion, Inc. v. BMW of N. Am., Inc.,* 136 F.3d 866, 870 (1st Cir.1998); *Borschow Hosp. and Med. Supplies, Inc. v. Cesar Castillo, Inc.,* 96 F.3d 10, 14 (1st Cir.1996); *R.W. Intern. Corp. v. Welch Foods, Inc.,* 88 F.3d 49, 51 (1st Cir.1996). These relationships may not be terminated by the principal except for "just cause"[5] as defined by the statutes.

Arbitration clauses in Law 75 relationships have been upheld pursuant to the Federal Arbitration Act ("FAA")[6] despite

---

**2.** Letter from the Alcatel Defendants to plaintiff dated August 5, 1994.

**3.** Letters to plaintiff dated September 11 and 22, 1995. *See also* letter to plaintiff dated January 31, 1995.

**4.** Law 21 protection is prospective since 1990; is available only to exclusive sales representatives, and provides for an alternate compensation scheme. Further, contrary to Law 75 no specific provision was included

preventing the principal from invoking just cause due to a change in ownership or management structure.

**5.** *See* P.R. Laws Ann. tit. 10, § 279a (Law 21) and § 278a (Law 75).

**6.** In pertinent part, the FAA reads:

> A party aggrieved by the alleged failure... or refusal of another to arbitrate under a written agreement for arbitration

the statutory prohibition to that effect.[7] *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Carro v. Parade of Toys, Inc.,* 950 F.Supp. 449 (D.P.R.1996); *Medika Int'l, Inc. v. Scanlan Int'l, Inc.,* 830 F.Supp. 81 (D.P.R. 1993); *McCain Foods Ltd., v. Puerto Rico Supplies, Inc.,* 766 F.Supp. 58 (D.P.R. 1991); *World Films v. Paramount Pictures Corp.,* 125 D.P.R. 352 (1990). *See also* Edward M. Borges, *Extraterritorial Application of State Law,* 18 WTR Franchise L.J. 102 (winter, 1999); Rossell Barrios–Amy, *Effect of Arbitration and Choice of Law Clauses on the Application of Puerto Rico Dealer's Act,* 16 SUM Franchise L.J. 3 (Summer, 1996); Richard M. Krumbein, *Protectionism in Puerto Rico: The Impact of the Dealer's Contracts Law on Multinational Companies Planning Operations in Puerto Rico,* 25 Case W. Res. J. Int'l L. 79 (Winter, 1993).

■The standard governing this Court's consideration of a petition to compel arbitration is well-established. Where there is " 'an agreement to arbitrate, the FAA reflects a strong, well-established, and widely recognized federal policy in favor of arbitration.' ", *KKW Enter., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.,* 184 F.3d 42, 50 (1st Cir.1999), *quoting Vimar Seguros Y Reaseguros, S.A. v. M/V SKY REEFER,* 29 F.3d 727, 730 (1st Cir.1994), *aff'd,* 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). Federal law mandates that this Court "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *KKW Enter.,* 184 F.3d at 49; *Sea–Land Serv., Inc. v. Sea–Land of Puer-*

to *Rico, Inc.,* 636 F.Supp. 750, 753 (D.P.R. 1986).

■ Pursuant to the FAA, the Court is required to evaluate the facts and the positions espoused by the parties in light of the "liberal federal policy favoring arbitration agreements", which "requires a liberal reading of [such] agreements, . . .". *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *KKW Enter.,* 184 F.3d at 49; *Sec. Indus. Ass'n v. Connolly,* 883 F.2d 1114, 1119, 1123 (1st Cir.1989), *cert. denied,* 495 U.S. 956, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990); *Dean Witter Reynolds, Inc. v. Sanchez Espada,* 959 F.Supp. 73, 78 (D.P.R.1997).

■ The FAA further " 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, . . .' " *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), *quoting, Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927; *McCarthy v. Azure,* 22 F.3d 351, 355 (1st Cir.1994); *Commercial Union Ins. Co. v. Gilbane Bldg. Co.,* 992 F.2d 386, 388 (1st Cir.1993); *DJ Mfg. Corp. v. Tex–Shield, Inc.,* 998 F.Supp. 140, 143 (D.P.R.1998); and *Sanchez Espada,* 959 F.Supp. at 79.

■ Where a written contract contains an arbitration clause, "there is a presumption of arbitrability" in the sense that a request for an order compelling arbitration should not be denied by the Court, " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

---

may petition... [the] court... for an order directing that such arbitration proceed in the manner provided for in such agreement.
9 U.S.C. § 4.

**7.** P.R. Laws Ann. tit.10, § 278b–2 in pertinent part reads:
 Any stipulation that obligates a dealer to... arbitrate... any controversy that

comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law... shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void. (Emphasis ours).
No similar provision is contained in Law 21.

asserted dispute. Doubts should be resolved in favor of coverage.' " *AT & T Tech., Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), *quoting United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Newspaper Guild of Salem, Local 105 v. Ottaway Newspapers, Inc.,* 79 F.3d 1273, 1279 (1st Cir.1996); *Unionmutual Stock Life Ins. Co. v. Benef. Life Ins. Co.,* 774 F.2d 524, 528 (1st Cir.1985); *DJ Mfg.,* 998 F.Supp. at 143; and *Sanchez Espada,* 959 F.Supp. at 79.

■ The Court is required to compel the parties to arbitrate once it has satisfied itself that neither the making of the arbitration agreement nor the failure to comply therewith is at issue. *Moses H. Cone,* 460 U.S. at 22, n. 27, 103 S.Ct. 927; and *County of Middlesex v. Gevyn Construct. Corp.,* 450 F.2d 53, 55 (1st Cir.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1176, 31 L.Ed.2d 232 (1972).

## B. The Agreements

■ There is no dispute that plaintiff executed various written agreements with defendant Alcatel Standard SA each of which contained an identical arbitration clause.[8] However, the issues presented in this litigation are not premised on the alleged breach of terms or conditions contained in any of the written agreements which would have triggered the application of the arbitration clause. Rather, the claims asserted in the complaint arise in connection with the alleged termination of an oral exclusive representation contract, or alternatively an oral exclusive distribution contract. Plaintiff alleges that on or about 1995 it became the exclusive representative and/or distributor for the Alcatel Defendants[9] via a "verbal" contract "confirmed by the sales activities carried out

and conducted by [plaintiff] in Puerto Rico."[10]

Plaintiff argues that during the extended period of time in which the parties were negotiating the terms of the written agreement it developed a "progressively expansive market"[11] of the Alcatel Defendants' products and services which entitles it to the protection of either Law 21 or Law 75 pursuant to *R.W. Int'l Corp. v. Welch Food Inc.,* 13 F.3d 478 (1st Cir.1994).

In *R.W. Int.* the Court of Appeals held that a relationship within the meaning of Law 75 (or Law 21) may exist while business negotiations are ongoing regardless of the fact that a contract has not and does not materialize provided that "an actual dealership relationship . . . existed contemporaneously with the negotiations." *id.* at 484. Thus, the relevant inquiry pursuant to the allegations asserted in the complaint is whether prior to receiving the termination letter in early 1999 plaintiff was acting as a *de facto* dealer or agent during the interim dialogue period by developing a market for the Alcatel Defendants' products. Thus framed, the central dispute in this litigation is not dependent on the written agreements since it did not "aris[e] in connection" with any of its terms or conditions. Therefore, the arbitration clause in the written agreements is not susceptible to an interpretation which could reasonably include the controversy at hand.

Based on the foregoing, we find that the first element which must be met to require this Court pursuant to § 4 of the FAA to issue an order compelling arbitration is lacking.

## IV. CONCLUSION

Accordingly, Defendants' Motion and Memorandum of Law To Compel Arbitra-

---

8. *See* Arbitration clause transcribed at page... *supra.*

9. Complaint ¶ 8.

10. Complaint ¶ 10.

11. Plaintiff's Opposition (docket No. 12) at 5.

tion filed on January 20, 2000 (docket No. 9)[12] is hereby **DENIED.**

It is further ORDERED that plaintiff's Motion to Dismiss and/or to Strike (docket No. 23) is **DENIED.**

IT IS SO ORDERED.

12. *See also* plaintiff's Opposition to the Motion to Compel Arbitration, filed on February 3, 2000 (docket No. 12) and Alcatel Defen- dants' Reply, filed on February 14, 2000 (docket No. 18).