Julia I. COLON DE SANCHEZ,
et al, Plaintiffs,

v.

MORGAN STANLEY DEAN WITTER,
et al, Defendants.

No. CIV. 04–2402(JAF).

United States District Court,
D. Puerto Rico.

June 17, 2005.

---

Alfredo Fernandez–Martinez, Delgado & Fernandez, Jose E. Cespedes–Sabater, Cobian & Valls, San Juan, PR, for Plaintiffs.

Heidi L. Rodriguez–Benitez, Pietrantoni Mendez & Alvarez, San Juan, PR, PHV Bradford D. Kaufman, PHV Joseph C. Coates, West Palm Beach, FL, for Defendants.

Carlos Soto, San Juan, PR, pro se.

## OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs, Julia Iris Colón de Sánchez; Dr. Jesús Sánchez Colón, Dr. Kim Ocasio

and their conjugal partnership; and Iris Lissette Sánchez Colón bring the present action alleging, inter alia, negligence, breach of fiduciary duty, and racketeering against Defendants, Morgan Stanley Dean Witter ("MSDW"); Carlos Soto, Isabel Cruz and their conjugal partnership; John Doe, Sally Roe and their conjugal partnership; ABC Insurance; XYZ Surety; Preferred Insurance; Richard Doe; and Richard Roe. *Docket Document No. 1.* Plaintiffs seek declaratory judgment, injunctive relief, immediate reimbursement and release of funds, compensatory damages, treble damages, and attorney's fees. *Id.*

Defendant MSDW moves to compel arbitration and to stay the action under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (1999 & Supp.2005). *Docket Document Nos. 5, 15.* Upon review of the pleadings, the submitted evidence, and applicable case law, we grant Defendant MSDW's motion to compel arbitration.

## I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from Plaintiffs' complaint. *Docket Document No. 1.*

Plaintiff Julia Iris Colón de Sánchez is a resident of Guaynabo, Puerto Rico. She opened an investment account with Defendant MSDW on May 8, 1999, but did not sign an account agreement until June 30, 2003.

Plaintiffs Dr. Jesús Sánchez Colón and Dr. Kim Ocasio are San Juan, Puerto Rico, residents and professional dentists with offices in Caguas, Puerto Rico. They opened a joint investment account with Defendant MSDW on April 4, 1997, but did not sign an account agreement until December 12, 2002. Plaintiff Ocasio opened a separate account on June 20, 1997, and signed an account agreement on June 30, 2003.

Plaintiff Iris Lissette Sánchez Colón is a resident of Guaynabo, Puerto Rico. She opened an investment account and signed an account agreement on June 30, 2003.

Plaintiffs are all members of the Sánchez family.

Defendant MSDW is a licensed securities brokerage and investment firm incorporated under the laws of the State of Delaware, with offices in San Juan, Puerto Rico, successor in interest of Dean Witter Reynolds with its principal place of business in New York.

Defendants Carlos Soto and Isabel Cruz are United States citizens and residents of San Juan, Puerto Rico. Defendant Soto was a registered investment and financial advisor for Defendant MSDW for an unspecified number of years until February 11, 2004.

Defendants John Doe and Sally Roe are United States citizens and residents of Puerto Rico. At all times relevant to the dispute, John Doe was a Defendant MSDW employee and Defendant Soto's supervisor.

Defendants ABC Insurance, XYZ Surety, Preferred Insurance, Richard Doe, and Richard Roe are unknown persons or entities that could be liable to the Sánchez family.

Defendant Soto has recently admitted in a related criminal case that he devised and effectuated a fraudulent scheme whereby he raised money from his clients, including the Sánchez family, under false pretenses. As part of the scheme, Defendant Soto would convince his clients to entrust him with their money with the promise that it would be invested in low-risk instruments. Instead, he would invest his clients' money in equity securities with higher returns

and then skim the difference for himself. Defendant Soto plead guilty to mail and wire fraud and other felonies related to the securities scheme.

In executing this fraudulent scheme, Defendant Soto used Defendant MSDW's property, resources, and equipment. He also used Defendant MSDW's account statement forms, completed with false information, to effectuate his ruse.

On December 22, 2004, Plaintiffs filed the present complaint. *Docket Document No. 1.* On February 9, 2005, Defendant MSDW filed a motion to compel arbitration. *Docket Document No. 5.* Plaintiffs opposed the motion on March 15, 2005. *Docket Document No. 11.* On March 29, 2005, Defendant MSDW filed a reply, *Docket Document No. 15,* and Plaintiffs filed a surreply on April 22, 2005. *Docket Document No. 22.*

## II.

### *Motion to Compel Arbitration Standard*

■ The standard governing motion petition to compel arbitration is well-established. Where there is an agreement to arbitrate, the FAA reflects a strong federal policy favoring arbitration. *HIM Portland, LLC v. DeVito Builders, Inc.,* 317 F.3d 41, 43 (1st Cir.2003); *see also KKW Enter., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.,* 184 F.3d 42, 50 (1st Cir.1999) (quoting *Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer,* 29 F.3d 727, 730 (1st Cir.1994), *aff'd,* 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995)). Federal law mandates the rigorous enforcement of arbitration agreements. *See Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *KKW Enter.,* 184 F.3d at 49;

*Brennan v. King,* 139 F.3d 258, 264 (1st Cir.1998).

■ Pursuant to the FAA, we evaluate the facts and the positions espoused by the parties in light of the "liberal federal policy favoring arbitration agreements" that "requires a liberal reading of [such] agreements ...." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *KKW Enter.,* 184 F.3d at 49; *Codecom, Inc. v. Alcatel Standard, S.A.,* 103 F.Supp.2d 65, 68 (D.P.R.2000). Accordingly, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927); *McCarthy v. Azure,* 22 F.3d 351, 355 (1st Cir.1994); *Commercial Union Ins. Co. v. Gilbane Bldg. Co.,* 992 F.2d 386, 388 (1st Cir.1993); *DJ Mfg. Corp. v. Tex–Shield, Inc.,* 998 F.Supp. 140, 143 (D.P.R.1998).

■ The court must compel the parties to arbitrate once it is satisfied that neither the making of the arbitration agreement nor the failure to comply therewith is at issue. *Moses H. Cone,* 460 U.S. at 22 n. 27, 103 S.Ct. 927; *Codecom,* 103 F.Supp.2d at 69.

## III.

### *Analysis*

#### A. *The Arbitration Agreement*

Defendant MSDW moves to compel arbitration based upon the arbitration agreement signed by each Plaintiff. *Docket Document No. 5.* The arbitration agreement is a broadly-worded, standard form.[1]

---

1. The arbitration agreement states, in relevant part:

   You agree that all controversies between you or your principals or agents and Morgan Stanley or its agents (including affiliated corporations) arising out of or concerning any of your agents, orders or transactions or the construction, performance or breach of this or any other agreement between us, whether entered into be

The terms require little discussion, and Plaintiff concedes that they clearly cover the present dispute.[2]

Plaintiffs contend, however, that Defendant Soto fraudulently induced them to sign the arbitration agreement to prevent a court of law from exercising jurisdiction. *Docket Document No. 11.* Plaintiffs argue that Defendant MSDW and Defendant Soto foresaw litigation as the result of Defendant Soto's criminal activity and, to limit Plaintiffs' remedies, Defendant MSDW and Defendant Soto encouraged Plaintiffs to sign the margin client agreement that contained the arbitration agreement. *Id.; see also Docket Document No. 5, Exhs. 1–4.* Plaintiffs point to the fact that they signed the margin client agree-

ments several years after opening their accounts, but only a couple of months before Defendant Soto was subject to criminal charges. *Docket Document No. 22.* Thus, according to Plaintiffs, we should deny Defendant MSDW's motion to compel arbitration because the validity of the arbitration agreement is at issue. *Id.*

Under Puerto Rico law, lack of consent, or consent given through error or deceit, renders a contract null. 31 L.P.R.A. §§ 3391 & 3404 ("Consent given by . . . deceit shall be void").[3] Thus, if Defendant Soto fraudulently induced Plaintiffs to sign the arbitration agreement, it would be invalid and unenforceable.

█ Plaintiffs make no viable claim, however, that the arbitration clause was

---

fore or after the date an account is opened, shall be determined by arbitration only before the New York Stock Exchange, Inc.; the National Association of Securities Dealers, Inc. or the Municipal Securities Rulemaking Board, as you may elect.

*Docket Document No. 5, Exhs. 1–4.*

2. We also note that the arbitration agreement applies retroactively to all of Plaintiffs' transactions. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King,* 804 F.Supp. 1512, 1514 (M.D.Fla.1992) ("[A]n arbitration agreement may be applied retroactively to transactions which occurred prior to execution of the arbitration agreement.") (citations and quotation marks omitted).

3. Defendant MSDW argues that federal law should govern our determination of the validity and enforceability of the arbitration agreement. *Docket Document No. 15.* Plaintiffs counter that Puerto Rico law should determine the validity and enforceability of the arbitration agreement. *Id.*

In this regard, the law is clear. Though the FAA preempts any state law that discourages arbitration, the validity and enforceability of arbitration agreements are still matters of state contract law. *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER,* 515 U.S. 528, 555, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995) (O'Connor, J., concurring) (stating that the

§ 2 of the FAA "plainly intends to place arbitration clauses upon the same footing as all other contractual clauses. Thus, like any clause, an arbitration clause is enforceable, save upon such grounds as would suffice to invalidate any other, nonarbitration clause") (quotation marks omitted); *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."); *Southland Corp. v. Keating,* 465 U.S. 1, 11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (holding that a party may assert general contract defenses, such as fraud and duress, to avoid enforcement of arbitration agreement); *Campbell v. Gen. Dynamics Gov't Sys. Corp.,* 407 F.3d 546, 552 (1st Cir.2005) ("[F]or the most part, general principles of state contract law control the determination of whether a valid agreement to arbitrate exists."); *Dean Witter Reynolds, Inc. v. Sanchez Espada,* 959 F.Supp. 73, 78 (D.P.R.1997) ("States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause upon such grounds as exist at law or in equity for the revocation of any contract.") (quoting *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). Thus, Plaintiffs are correct that Puerto Rico contract law guides our analysis.

procured by fraud or deceit. We find nothing in the record to indicate that Defendant Soto or Defendant MSDW made any fraudulent representations about arbitration. There is no indication that the parties intended to exclude from arbitration disputes about the validity of their agreement that might create a presumption of fraud or deceit. There was no fraudulent attempt to alter the terms, nor was there a fraudulent attempt to shelter Defendant Soto's criminal actions from liability. *See Prima Paint*, 388 U.S. at 406, 87 S.Ct. 1801.

■ Furthermore, the assertion that the arbitration agreement was an attempt to limit judicial remedies is inapposite. First, the FAA allows the court to give relief where the party opposing arbitration presents well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract. *Mitsubishi*, 473 U.S. at 627, 105 S.Ct. 3346; *Cellu–Beep, Inc. v. Telecorp., Inc.*, 322 F.Supp.2d 122, 124 (D.Puerto Rico 2004). We see no such evidence regarding the signing of the arbitration agreement. Second, preventing a court from exercising jurisdiction in favor of arbitration is simply what arbitration agreements do and, standing alone, does not provide grounds for invalidation. *See Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, 57 (1st Cir.2002) (holding that an arbitration clause was valid, despite the plaintiff's claim that it limited access to judicial remedies, because it did not limit the power of the arbitrator to award relief). As such, Plaintiffs' challenge is an assertion of fraud, but nothing more.

Finally, any suspicion that develops from the fact that the arbitration agreements were signed well after the Plaintiffs' accounts were opened and shortly before Mr. Soto's criminal charges is a suspicion running to the entire contract.[4] To that effect, the statutory language "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint*, 388 U.S. at 404, 87 S.Ct. 1801.

**B. *Stay of Nonarbitrable Claims***

■ Section 3 of the FAA dictates that a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. The First Circuit has held that when plaintiff's claims are interrelated and arbitration could serve to "clarify and perhaps even simplify the remaining issues which must be litigated," a stay of both the arbitrable and the nonarbitrable claims is within the trial court's sound discretion. *Sevinor v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 807 F.2d 16, 20 (1st Cir.1986). It appears that this court will gain valuable insight into the claims against the remaining co-defendants from the arbitration hearings. A stay of all remaining claims, then, would promote judicial economy, avoidance of confusion and possible inconsistent results, and would not work undue hardship or prejudice against Plaintiffs. *DJ Mfg. Corp.*, 998 F.Supp. at 145–46.

**IV.**

*Conclusion*

In accordance with the foregoing, we **grant** Defendant's motion to compel arbitration and **stay** all non-arbitrable claims. Parties to report on the progress of the

---

4. Despite this court's conclusions, we have serious reservations about the validity of the contract as a whole, since it appears that the contracts were components of Defendant Soto's admitted criminal activity.

arbitration proceedings every forty-five (45) days.

**IT IS SO ORDERED.**