**KKW ENTERPRISES, INC.,**
**Plaintiff, Appellee,**

v.

**GLORIA JEAN'S GOURMET COF-**
**FEES FRANCHISING CORP.,**
**Defendant, Appellant.**

**No. 98–2337.**

United States Court of Appeals,
First Circuit.

Argued June 7, 1999.

Decided July 19, 1999.

Frederic A. Cohen, with whom Norman M. Leon, Rudnick & Wolfe, William M. Dolan III, Angel Taveras and Brown, Rudnick, Freed & Gesmer were on brief, for appellant.

George E. Lieberman, with whom Tillinghast Licht & Semonoff Ltd., was on brief, for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.

TORRUELLA, Chief Judge.

Defendant-appellant, Gloria Jean's Gourmet Coffees Franchising Corp. ("Gloria–Jean's"), appeals the district court's order partially granting the motion of plaintiff-appellee, KKW Enterprises, Inc. ("KKW"), to stay arbitration as to claims under the Rhode Island Franchise Investment Act, R.I. Gen. Laws § 19–28.1–14 ("statutory claims"), and its order denying Gloria Jean's motion to stay proceedings pending arbitration as to the statutory claims.

## BACKGROUND

Gloria Jean's is an Illinois corporation with its principal place of business in Castroville, California. Gloria Jean's grants franchises to qualified persons to operate Gloria Jean's Gourmet Coffee Stores throughout the United States. KKW is a franchisee of Gloria Jean's.

On November 25, 1992, KKW entered into franchise agreements with Gloria

Jean's pursuant to which Gloria Jean's granted KKW limited licenses to operate Gloria Jean's franchises at the Independence Mall in Kingston, Massachusetts and in the Northshore Shopping Center, in Peabody, Massachusetts. KKW subsequently entered into two subsequent franchise agreements with Gloria Jean's to operate Gloria Jean's Gourmet Coffee Stores in Square One Mall, in Saugus, Massachusetts, and at the University Mall in South Burlington, Vermont.

The franchise agreements were heavily negotiated. KKW was represented by counsel in connection with those negotiations, and KKW's counsel proposed various changes to the franchise agreements, all of which were incorporated into those agreements. None of the changes to the franchise agreements which KKW's counsel proposed during these negotiations concerned the arbitration agreements or the selection of Chicago as the forum for arbitration of disputes under the agreements.

In entering into each of the franchise agreements, the parties explicitly agreed that they would submit all disputes arising out of or relating to the franchise agreements, the validity of those agreements, or the parties' relationship to arbitration before the American Arbitration Association ("AAA"). Paragraph 18.B of each franchise agreement, in pertinent part, states:

EXCEPT INSOFAR AS THE FRANCHISOR AS PROVIDED IN PARAGRAPH A OF THIS SECTION ELECTS TO ENFORCE THIS AGREEMENT OR ANY OTHER RELATED AGREEMENT, ALL CONTROVERSIES, DISPUTES OR CLAIMS ARISING BETWEEN THE FRANCHISOR, ITS AFFILIATES, OFFICERS, DIRECTORS, AGENTS, EMPLOYEES AND ATTORNEYS (IN THEIR REPRESENTATIVE CAPACITY) AND THE FRANCHISEE (ITS OWNERS AND GUARANTORS, IF APPLICABLE) ARISING OUT OF OR RELATED TO: (1) THIS AGREEMENT OR ANY PROVISION THERE-OF OR ANY RELATED AGREEMENT; (2) THE RELATIONSHIP OF THE PARTIES HERETO; (3) THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENT, OR ANY PROVISION THEREOF; OR (4) ANY SPECIFICATION, STANDARD OR OPERATING PROCEDURE RELATING TO THE ESTABLISHMENT OR OPERATION OF THE FRANCHISE SHALL BE SUBMITTED FOR ARBITRATION TO BE ADMINISTERED BY THE CHICAGO, ILLINOIS OFFICE OF THE AMERICAN ARBITRATION ASSOCIATION ON DEMAND OF EITHER PARTY. SUCH ARBITRATION PROCEEDINGS SHALL BE CONDUCTED IN CHICAGO, ILLINOIS AND, EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, SHALL BE CONDUCTED IN ACCORDANCE WITH THE THEN CURRENT COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION.

On May 7, 1998, KKW filed a ten count complaint against Gloria Jean's in the Superior Court of the State of Rhode Island for Providence County. That action was removed by Gloria Jean's to the United States District Court for the District of Rhode Island on June 4, 1998. KKW's complaint alleges that Gloria Jean's fraudulently induced it to enter into certain franchise agreements by misrepresenting: (1) its ability to obtain favorable leases; (2) its ability to obtain certain types of store locations; and (3) the success of another franchise. Claiming that it relied upon these alleged misrepresentations in entering into its franchise agreements with Gloria ·Jean's, KKW's complaint seeks damages for the losses it purportedly incurred in obtaining and operating its Gloria Jean's Stores, and rescission of its two remaining franchise agreements.

KKW's complaint asserts four claims for damages: (1) intentional misrepresentation (Count I); (2) breach of fiduciary duty

(Count V); (3) violation of the Rhode Island Franchise Investment Act (Count VII) and violation of the Rhode Island Franchise and Distributorship Investment Regulations Act (Count IX); and (4) six claims which it contends entitles it to rescission of its remaining franchise agreements—intentional misrepresentation (Count II), negligent misrepresentation (Count III), innocent misrepresentation (Count IV), breach of fiduciary duty (Count VI), violation of the Rhode Island Franchise Investment Act (Count VIII) and violation of the Rhode Island Franchise and Distributorship Investment Regulations Act (Count X).

On June 11, 1998, Gloria Jean's moved, pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, to stay the district court action pending arbitration. At the August 7, 1998 hearing on that motion, the district court concluded that all of the claims set forth in KKW's Complaint were referable to arbitration under the parties' written arbitration agreements. The district court nonetheless denied Gloria Jean's Motion to Stay as premature, concluding that the arbitration agreements required, as a condition precedent to arbitration, that Gloria Jean's not only move to stay the litigation, but actually "demand" arbitration.

Immediately after the August 7, 1998 hearing, on August 11, 1998, Gloria Jean's filed a Demand for Arbitration with the Chicago, Illinois office of the American Arbitration Association seeking a declaration that it has no liability for the claims asserted in KKW's Complaint. Gloria Jean's also demanded, by letter of the same date, that KKW submit the claims pending in the district court, as well as any other claims encompassed by the parties' arbitration agreements, to arbitration in accordance with the terms of those agreements. On August 12, 1998, Gloria Jean's filed a Renewed Motion to Stay Proceedings Pending Arbitration.

On September 1, 1998, KKW moved to stay the arbitration proceeding Gloria Jean's had commenced. On October 23, 1998, oral argument was held before the district court on both Gloria Jean's Renewed Motion to Stay Proceedings Pending Arbitration and KKW's Motion to Stay Arbitration. By Order dated November 4, 1998, the district court, *inter alia,* (1) granted Gloria Jean's Motion to Stay Proceedings Pending Arbitration as to KKW's non-statutory claims; (2) denied the Motion as to KKW's statutory claims; (3) granted KKW's Motion to Stay the arbitration in Chicago, Illinois as to KKW's statutory claims; and (4) denied that Motion as to the non-statutory claims.

Addressing KKW's common-law claims, the Court stated that "[t]here's no question in the Court's mind that the dispute here, or the core of the dispute, at least, [sic] the non-statutory claims that are asserted by the Plaintiff are arbitrable." The district court further stated, however, that its conclusion that KKW's non-statutory claims were arbitrable did not "answer the question as to where the arbitration should take place as to those claims, nor does it answer the question regarding [the arbitrability of] the statutory claims."

In discussing this question, the district court first stated that "[t]he Federal Arbitration Act does not preempt provisions in an agreement to arbitrate that deal with the mechanics of the arbitration, where are they to take place, where the arbitration is to take place and the like." For this reason, the district court concluded, it was required to determine the validity of the arbitration agreements' choice-of-forum clause in light of the standards set forth by the United States Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Noting the strong presumption in favor of forum selection clauses established by that decision and the similarly strong relationship between Illinois and the underlying dispute, the district court concluded, at least with respect to KKW's non-statutory claims, that there was no basis for disregarding the parties' agreement to arbitrate

their disputes before the Chicago office of the AAA. Accordingly, the district court granted Gloria Jean's Motion to Stay Proceedings Pending Arbitration as to KKW's non-statutory claims, and denied KKW's motion to stay the arbitration of those claims.

KKW's statutory claims, the district court stated, presented a "different situation." Relying on § 19–28.1–14 of the Rhode Island Franchise Investment Act, the district court stated that because "[t]he Rhode Island General Assembly has, specifically, stated a strong policy against provisions that restrict jurisdiction or venue to a forum outside of this State," the choice-of-forum provision in the parties' arbitration agreements was "invalid and unenforceable" with respect to KKW's statutory claims. Gloria Jean's Motion to Stay was therefore denied as to those claims.

On November 20, 1998, the district court issued an Amended Order Granting in Part and Denying in Part Motions for Stays and Enlargements of Time. In that November 20 Amended Order, the district court amended its ruling regarding Gloria Jean's Motion to Stay, as follows:

> The defendant Gloria Jean's motions to stay these proceedings pending the outcome of arbitration in Chicago is granted with respect to the non-statutory claims set forth in Counts I–VI [of KKW's Complaint]. The motion is denied with respect to the statutory claims set forth in Counts VII–X without prejudice to being renewed if and when arbitration is demanded in a forum permitted by Gen. Laws R.I. § 19–28.1–14.

Gloria Jean's filed its Notice of Appeal on December 4, 1998.

## DISCUSSION

### I. Jurisdiction

KKW argues that this Court lacks jurisdiction over the appeal. It alleges that: (1) the district court's amended order simply gives preference to arbitration over litigation and does not enjoin arbitration from proceeding; (2) an order declining to enforce a forum selection clause is not appealable; and (3) Gloria Jean's conduct in connection with the Pre–Trial Conference, its failure to timely inform the district court of its petition concerning staying the proceedings, and its repeated requests for extensions of time to respond to the complaint and discovery forfeited any right it might have had to a pre-trial appeal and waived any right to arbitrate. We disagree.

In its November 4, 1998 Order addressing KKW's Motion to Stay the arbitration proceeding which Gloria Jean's had commenced before the AAA in Chicago, the district court stated: "The Motion of Plaintiff [KKW] to Stay Arbitration in Chicago, Illinois . . . is granted as to the statutory claims." The district court reiterated its stance in its November 20, 1998 Amended Order, stating: "The plaintiff KKW's motion to stay arbitration in Chicago is denied with respect to the non-statutory claims and granted with respect to arbitration of the statutory claims in Chicago."

The district court's orders stayed a pending arbitration proceeding and are immediately appealable. *See PCS 2000 LP v. Romulus Telecomm., Inc.*, 148 F.3d 32, 34 (1st Cir.1998) ("Because the district court's stay order is in the nature of an injunction, we have appellate jurisdiction."); *see also* 9 U.S.C. § 16(a)(2) (authorizing an immediate appeal from "an interlocutory order granting . . . an injunction against an arbitration that is subject to this title"); 28 U.S.C. § 1292(a)(1) (permitting interlocutory appeals from injunctions).

Similarly, the district court's orders are appealable so far as they refuse to stay the district court's own litigation on issues subject to arbitration under an agreement governed by the FAA. Section 3 of the FAA expressly provides that if suit is brought on an issue referable to arbitration under a written agreement, the court

shall stay the matter until arbitration "has been had in accordance with the terms of the Agreement." 9 U.S.C. § 3. And the statute further provides that an appeal may be taken from an order "refusing to stay any action under Section 3 of this title." 9 U.S.C. § 16.

KKW says that "all Gloria Jean's needs to do in order to have the statutory claims arbitrated is simply to demand arbitration." (KKW Br. at 18). However, Gloria Jean's has already demanded arbitration, and the district court has refused either to compel arbitration on KKW's statutory claims or to stay its own litigation as to those claims. Since both the district court and KKW recognize that all the claims set forth in KKW's complaint fall within the scope of the arbitration agreements, the district court's action is in both respects immediately appealable.[1]

■■ KKW also says that the district court's November 20 Order is not truly an order staying or enjoining arbitration but is merely an order declining to enforce a forum selection clause. This claim is wrong. "Under the FAA, the court must order the parties to arbitrate 'in accordance with the terms of the agreement'; one term of the agreement is the parties' forum selection clause." *Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir.) (footnote omitted), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984), *overruled on other grounds, Felzen v. Andreas,* 134 F.3d 873 (7th Cir.1998).

Finally, KKW contends that Gloria Jean's forfeited any right it might have had to a pre-trial appeal and waived any right to arbitrate through: (1) its conduct in connection with the Pre–Trial Conference; (2) its failure to timely inform the district court of its petition concerning staying proceedings; and (3) its repeated requests for extensions of time to respond to the complaint and discovery.

■ On the "forfeiture" issue, KKW fails to cite any relevant cases in support of its proposition. Without such a basis in law, we reject this contention out of hand. On the "waiver" issue, this contention was not raised by KKW until December 23, 1998—almost three weeks after Gloria Jean's filed its notice of appeal and a month after the district court issued its November 20, 1998 Amended Order. Thus, KKW's argument is not properly before the court. *See United States v. Walker,* 601 F.2d 1051, 1055 (9th Cir.1979) ("We are here concerned only with the record before the trial judge when his decision was made.").

## II. Validity of the Arbitration Clause

### A. Standard of Review

■■ We review *de novo* the district court's denial of a Motion To Stay Proceedings Pending Arbitration. *See Haviland v. Goldman, Sachs & Co.,* 947 F.2d 601, 604 (2d Cir.1991). We also review *de novo* the district court's order granting KKW's Motion to Stay. While "[a]n order staying an arbitration proceeding is in substance, and often in form, a directive to the parties to cease the arbitration" and is a result "injunctive in character," *Tejidos de Coamo, Inc. v. ILGWU,* 22 F.3d 8, 10 (1st Cir.1994), the district court's order is not entitled to the abuse of discretion standard normally accorded the grant of injunctive relief. "[I]f a district court's ruling rests solely on a premise as to the applicable rule of law ... and the facts are established or of no controlling relevance, that ruling may be reviewed [*de novo* ] even though the appeal is from the entry of a preliminary injunction." *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 757, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986).

---

1. Although the issue need not be resolved because a demand was made, we should not be understood as endorsing the district court's ruling that Gloria Jean's had to make such a demand before arbitration could be compelled or a stay of the district court's own proceedings justified.

### B. Preemption

The central issue before this Court is whether § 19-28.1-14 of the Rhode Island Franchise Investment Act, which renders unenforceable "[a] provision in a franchise agreement restricting jurisdiction or venue to a forum outside [Rhode Island] . . . with respect to a claim otherwise enforceable under this Act," is preempted by the FAA.

The district court ruled that the "forum selection portion of the arbitration clause," which designates Chicago as the situs for any arbitration proceeding, was "invalid and unenforceable" as to KKW's statutory claims under the Rhode Island Franchise Investment Act. It further stated that "[t]he Federal Arbitration Act does not preempt provisions in an agreement to arbitrate that deal with the mechanics of arbitration, where are they to take place, where the arbitration is to take place and the like."

■ The contracts to which the statute applies implicate interstate commerce, thus subjecting them to the reach of the FAA. *See* 9 U.S.C. § 1; *see generally Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co.*, 643 F.2d 863, 867 (1st Cir. 1981) (the term "commerce" as used in the Act is to be broadly construed).

■ Any analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements. *See Perry v. Thomas*, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). The Supreme Court has observed that " '[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered.' " *Id.* (quoting *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)) (alteration in original). In harmony with that purpose, the Act declares "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ The Supremacy Clause of Article VI of the United States Constitution prevents the states from impinging on federal law and policy. *See Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). "[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. National Solid Waste Management Ass'n*, 505 U.S. 88, 108, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (internal quotation marks and citations omitted). Preemption "may be either express or implied, and is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.* at 98, 112 S.Ct. 2374 (internal quotation marks and citations omitted). "[S]tate law may nonetheless be preempted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the full accomplishment and execution of the full purposes and objectives of Congress.' " *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). "[A] direct, facial contradiction between state and federal law is not necessary to catalyze an 'actual[ ] conflict' within the doctrinal parameters of the Supremacy Clause . . . [as] a state law or regulation cannot take root if it looms as an obstacle to the achievement of the full purposes and ends which Congress has itself set out to accomplish." *See Securities Indus. Assoc. v. Connolly*, 883 F.2d 1114, 1118 (1st Cir. 1989).

■ "The FAA contains no express pre-emptive provision nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt*, 489 U.S. at 477, 109 S.Ct. 1248. However, to the extent that the Rhode Island Franchise Invest-

ment Act is construed to prohibit any provision in a franchise agreement which designates a forum for arbitration outside of Rhode Island, it presents an obstacle to the achievement of the full purposes and ends which Congress set out to accomplish in enacting the FAA—that "courts . . . [will] enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *See id.* at 478, 109 S.Ct. 1248.

Where, as here, "there is an agreement to arbitrate, the FAA reflects a strong, well-established, and widely recognized federal policy in favor of arbitration." *Vimar Seguros Y Reaseguros, S.A. v. M/V SKY REEFER,* 29 F.3d 727, 730 (1st Cir.), *aff'd,* 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). Section 3 of the FAA provides that if a suit is brought on an issue referable to arbitration under a written arbitration agreement, the court shall stay a matter until the arbitration "has been had in accordance with the Agreement." 9 U.S.C. § 3. Likewise, § 4 of the FAA requires that a court, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The venue in which arbitration is to take place is a "term" of the parties' arbitration agreements. *See Snyder,* 736 F.2d at 418 ("under [the FAA], the court must order the parties to arbitrate 'in accordance with the terms of the agreement'; one such term of the agreement is the parties' forum selection clause"). As we shall discuss in more detail below, *see infra* at C., a statute seeking to override that term, such as the Rhode Island Franchise Investment Act, is preempted by the FAA assuming that the FAA applies to the agreement. *See Alphagraphics Franchising, Inc. v. Whaler Graphics, Inc.,* 840 F.Supp. 708, 710 (D.Ariz.1993) (holding that a provision of the Michigan Franchise Investment Law which rendered void and unenforcea-

ble "[a] provision requiring that arbitration or litigation be conducted outside [Michigan]" imposed "limitations on the method and manner by which the parties agreed to arbitrate their disputes" and was preempted by the FAA).

## C. Forum Selection Clause

■ Gloria Jean's argues that the Rhode Island Franchise Investment Act's bar of all but in-state arbitration fora violates § 2 of the FAA. We agree.

The Supreme Court has stated:

We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract "evidencing a transaction involving commerce" and such clauses may be revoked upon "grounds as exist at law or in equity for the revocation of any contract." *We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under State law.*

*Southland Corp. v. Keating,* 465 U.S. 1, 10–11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (quoting 9 U.S.C. § 2) (footnote omitted) (emphasis added).

■ "[S]tate law, whether of legislative or judicial origin, is applicable [in the sense that it would affect the validity of an arbitration agreement, only] *if* that law arose to govern issues concerning the validity, revocability and enforceability of contracts generally." *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). *Only* "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

Here, the Rhode Island statute states that: "A provision in a franchise agreement restricting jurisdiction or venue to a

forum outside this state ... is void with respect to a claim otherwise enforceable under this act." R.I. Gen. Laws § 19–28.1–14. Because this proscription limits the statute's application to one type of provision, venue clauses, in one type of agreement, franchise agreements, the statute does not apply to *any* contract. Writ simple, because § 19–28.1–14 is not a generally applicable contract defense, it is, if applied to arbitration agreements, preempted by § 2 of the FAA.

We find more than ample support for this position in our prior case law, and opinions from our sister circuits. In *Mitsubishi Motors Corp.* v. *Soler Chrysler–Plymouth, Inc.,* 723 F.2d 155 (1st Cir. 1983), *cert. granted,* 469 U.S. 916, 105 S.Ct. 291, 83 L.Ed.2d 227 (1984), *aff'd in part, rev'd in part on other grounds,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), a plaintiff-franchisor brought suit against the defendant, one of its dealers, seeking an order pursuant to § 4 of the FAA compelling arbitration of a dispute which had arisen between the parties. After the district court granted in part the motion to compel, the dealer appealed contending that the arbitration agreement, which specified that any arbitration was to take place in Japan, was unenforceable. The dealer relied on a section of the Puerto Rico Dealers' Act, P.R. Laws Ann. tit. 10, § 278, which states that "[a]ny stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico ... shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void." *Id.* at § 278b–2.

We held that federal law preempts the direct application of § 278b–2, because the ground cited in the statute for invalidating a provision stipulating arbitration in a dealer's contract was not among the grounds that "exist at law or in equity for the revocation of any contract." *See Mitsubishi,* 723 F.2d at 158 (quoting 9 U.S.C. § 2).[2]

In *Doctor's Associates, Inc. v. Hamilton,* 150 F.3d 157 (2d Cir.1998), the plaintiff-franchisor filed a petition to compel arbitration of a lawsuit that the defendant-franchisee had filed in New Jersey state court. The franchisee opposed the petition to compel, asserting that the arbitration clause in the parties' franchise agreement, which specified that arbitration would be held in Connecticut, was void and unenforceable as against the policy of New Jersey. The Second Circuit stated:

> Despite the clear language in *Southland,* Hamilton [the franchisee] urges us to rely on *Kubis & Perszyk Assocs. v. Sun Microsystems,* 146 N.J. 176, 680 A.2d 618 (1996), to invalidate the Agreement's arbitral forum selection clause. Recognizing that state law may affect the validity and enforceability of arbitration to the extent that the state law applies to "the revocation of *any* contract," 9 U.S.C. § 2 (emphasis added), Hamilton maintains that the rule set forth in *Kubis* applies to all contracts, including the Agreement here.

> We disagree. *Kubis* did not establish a "generally applicable" contract defense that applies to "any" contract; it invalidated a franchise agreement's forum selection clause under the New Jersey Franchise Practices Act because it required the franchisee to sue in another jurisdiction. The *Kubis* decision applies to one sort of contract provision (forum selection) in only one type of contract (a

---

**2.** In spite of our clear language in *Mitsubishi,* KKW cites *Triangle Trading Co., Inc. v. Robroy Indus., Inc.,* 952 F.Supp. 75 (D.P.R. 1997), for the proposition that many courts, respecting fundamental state public policy, have refused to enforce forum selection clauses and choice of law provisions. First, as with many of the cases cited by KKW, *Trian-* gle—which also involves the Puerto Rico Dealers' Act—is simply not on point as it pertains to judicial fora rather than arbitral fora. Second, our opinion in *Mitsubishi* clearly lays out our view with regard to the Puerto Rico Dealers' Act and its provision essentially restricting an arbitral forum to the four corners of the island.

**52**

franchise agreement). Therefore, to the extent that *Kubis* can be read to invalidate arbitral forum selection clauses in franchise agreements, it is preempted by the FAA.

*Hamilton,* 150 F.3d at 163; *see Management Recruiters Int'l v. Bloor,* 129 F.3d 851, 856 (6th Cir.1997) (if the Washington Franchise Investment Protection Act "imposed an absolute requirement of in-state arbitration notwithstanding the parties' agreement to arbitrate [elsewhere], its validity would be in serious doubt as a result of the preemptive effect of the FAA").

Section 19–28.1–14's requirement that all claims arising under the Rhode Island Franchise Investment Act be brought in Rhode Island does not apply to all contracts and does not establish a generally applicable contract defense. Its prohibition of non-Rhode Island venues purports to restrict the enforcement of only one sort of contract provision, forum selection clauses, in only one type of contract, franchise agreements. Under § 2 of the FAA, that is impermissible.

 "Courts must give effect to ... freely-negotiated forum selection clauses." *See Snyder,* 736 F.2d at 419. "The choice of [ ] forum was made in an arms-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

Here, Gloria Jean's and KKW chose Chicago, Illinois as the forum for the arbitration of their disputes. Their choice of arbitral forum should have been honored by the district court. Courts may not rewrite the parties' agreements and compel arbitration of their dispute in a forum which is not one of those enumerated in an arbitration agreement's forum selection clause. *See Dean Witter Reynolds Inc. v. Prouse,* 831 F.Supp. 328, 330 (S.D.N.Y. 1993).

## CONCLUSION

For the foregoing reasons, we **reverse** the district court's partial denial of Gloria Jean's Motion to Stay Pending Arbitration, and **vacate** its order granting KKW's Motion to Stay Arbitration in Chicago with respect to the statutory claims under the Rhode Island Franchise Investment Act. Costs to appellant.